first case on our calendars, Altameo Assets versus Kihou, and I will hear from appellant, Mr. Lieberman. Good morning, your honors. On behalf of the plaintiff, we present this appeal. Your honors, in June of 2016, the Bayer Group, in this case, approved a merger of Kihou for $9.3 billion. 18 months thereafter, they went ahead and relisted that private entity for $62 billion, yielding returns of 550%. Your honors, there's nothing improper about that per se, but within that process, there were a series of misstatements made to investors about the intents of the Bayer Group and the prospects of the company going forward. But counsel, you have to explain to me why there wasn't fair notice in the proxy materials, appendix at page 453, where the above passage you cite, and then following that, it says, and may propose or develop plans and prospects, including any of the foregoing actions, and I'm quoting now, including the possibility of relisting the surviving company or a substantial part of its business on another internationally recognized stock exchange. Isn't that the heart of your case? That is the heart of the case. And they said they made it from time to time after the merger, make such a proposal, yet what was not disclosed, what they had already been planning at that time. So what? So what? The thing says that they don't have any plans except as set forth in this proxy statement. And then it says that they may do that. The fact that they may do that doesn't tell you anything about whether they had the plans before or not. That they may do that just informs you. It says nothing about whether they had plans or not. You're sophisticated. I mean, I must say, I would think that any sophisticated person who read that would say, these people may very well have such plans. It doesn't say that they don't have plans. Well, no, they said we have no current plans. They said there are no current plans or proposals. Except as they said, we have no plans, et cetera, except as said there. Except we may consider a whole host of corporate actions, including a merger. We may propose relisting. We may propose. It doesn't say we may think about proposing. It just says we may do it. We may propose it, but we have no current proposals and negotiations to do so. It doesn't say that in that book. I mean, the statement, the full statement does say the buy group does not have any current plans, proposals, or negotiations that relate to or would result in extraordinary corporate transaction involving the company's corporate structure, business, or management, such as a merger, reorganization, liquidation, and so on. And then it says subsequent to the merger, the management and board will continuously evaluate and review the surviving company's business operations from time to time and may propose or develop plans and proposals, including any of the foregoing actions, including a relisting. So they did say they didn't have any current plans, but then they also informed the public that there was a possibility that they would relist. So could you explain maybe why it would make a difference between saying there's a possibility we would relist, but don't have any current plans to do so and saying we have a current plan to do so? Sure. Basically, there was a concrete plan, despite what the condition report said. Well, there was a plan to relist in the Chinese exchange by a backdoor listing on an IPO for Class A shares in a process that would take 18 months, and that they would be separating their main entity and relisting that entity on its own. It was a specific plan pitched to the buyer group and said, this is precisely what we're going to do when we go ahead and become private. We're going to relist in about 18 months. The securities laws require full disclosure. And we said, well, we may do something in the future some activity in the future, some corporate transaction. So whether or not it's a misrepresentation is one question. But my question was, I just wanted to know what difference it would make to your clients between saying there's a possibility and saying that there's a plan. Well, if they said, we have a plan, the full truth. We have a plan. We're going to go back to our listing in Shanghai. We think it's going to make 550% profit, which is what they had in the materials. And that's going to take an 18 month process, going to be back to our listing. Investors would have said, let me A, hold onto my shares. I mean, not tender, or they would have sought an appraisal. They would not have sold their shares because they clearly, they were told there was no viable alternative when the company actually was considering going ahead and relisting in a five times multiple. And then they were considering and they were considering their better prospects down. You wouldn't have necessarily known what the result would be of the relisting. You would just know that there was a plan to do so, right? There was a plan to do so. Management believed that they would profit significantly from it. These are documented plans. So anybody can say, anybody can- Well, you're saying they're documented, but actually you really don't, I mean, the district court did not think you had sufficient documentation, right? So you have a confidential witness who's not identified, who was at a meeting where they talked about it and said it should be secret, I suppose. And then there's newspaper articles that have a kind of a plan, but you don't really have documentation of the plan, right? We don't have the documents ourselves. We have four newspaper articles that say they saw the materials from the underwriter discussing the plan. We have the confidential informant, five independent sources saying the same thing. Could you address the question about the statements about the fairness of the price and whether there was some misleading about that? Well, sure. You're saying there's a fairness in the price, yet what's not disclosed is that the chairman of the company had discussions with Chinese authorities. What evidence do you have? Because as to this, the confidential informant is even more vague and there's only one newspaper article that speaks to it rather than before, that there was knowledge that the price that was offered for the merger was inadequate given what you already do. So what evidence do you have? Because that would not be covered by the statement about except as stated in the proxy. So that would be there if you have evidence, but that's where I have problem with respect to evidence. Well, we have evidence that the admissions by the chairman that he had discussions with Chinese authorities that if they became a private company, their business in China would increase significantly. Yet they were saying that in their projections regarding fairness, they're projecting flat revenues in China. And they're actually, they said the reason why they proposed a relisting was because of the economic downturn in China. So you have concrete discussions with Chinese officials about bettering your prospects if you can get the right licensing, if you go ahead and delist, yet you're not disclosing that to investors. Actually, SEC time and time again prodded the company. They continually fail to disclose that they saw themselves as having better prospects in China. Significantly, a part of fairness, the fairness evaluation is going to be whether or not the company is gonna be publicly traded or whether it's not gonna be publicly traded. Because if the company is going to be publicly traded, company has more access to capital, there's more of a likelihood of getting a premium on the shares and there's more liquidity. And so when you're saying this is a fair price and you're also saying after the merger, we're no longer gonna be a publicly traded company and there are no proposals and no negotiations. Those are the words, no proposals or no negotiations. Except as stated, except as stated. Except that we may one day after the merger. Yeah, yeah, yeah. One day after the merger, we may propose. If you go back to that, you can go back to the first part. I was, the fair price is not covered by that. No, the fair price focuses on the prospects in China and there are discussions with Chinese officials that at some point, that if they would go ahead and delist and become a private entity, they would have much more business opportunities in the Chinese security space. Counsel, are your clients showing buyer's remorse for not taking up the Cayman Island valuation proceeding, which they could have done? They very well may be. Yeah, they certainly feel that they were lied to in the proxy materials. But are they sorry they didn't do that? And that's why the lawsuit? The lawsuits, either they're sorry they're doing it, had the full truth been disclosed to investors, the company would have been forced. So they wouldn't have won the proxy contest. They wouldn't have had the favorable vote because investors would have known, hey, there's a real documented plan to trade at a major multiple in 18 months. Why don't we hang on a stick on our shares? They would have voted against the merger. All right, your time has expired, but you've retained three minutes for rebuttal. Let's hear from the appellee, Qi Hu. Good morning, your honors. David Kistenbroker from Deckard on behalf of Qi Hu and Mr. Chen, who is chair of the special committee, the two dissidents before the court today. Your honors, in listening to the discussion, it's very clear that you understand the disclosures the company made throughout the various iterations of the proxy. They never changed as reflected in the joint appendix. It was always as the court has already discussed. So I won't belabor that. I think you're absolutely right that the core allegation by plaintiff is that there was this alleged current plan at the time of the merger, in spite of the fact that the company said, in the future, we may consider a number of things, as your honors have indicated. Well, but you were fairly well along in that consideration, weren't you? I'm sorry, could you repeat that, your honor? You were fairly well along in that consideration before the merger. Whether there was a signed deal or not is another matter, but you were fairly well along in the consideration of relisting in China, weren't you? I don't think there's any properly averred facts in the record, your honor, in the complaint to demonstrate that, and much, as has been indicated, can happen between cup and lip in talking about the potential for a merger in the future. Don't you think that an ordinary person looking at this would say that you guys were doing something to at least mislead? I mean, you were being very careful. You put some language in to protect your back, but that you were pushing towards the edge. I don't think there's anything averted in the complaint that would factually, in a particular pleading fashion, support that, your honor, but I'd like to point out one thing about fairness, because your honors brought that up. The complaint about fairness, in their briefs, they rely on cases that are very different than ours. Fairness of price, I'm talking about. Yes, fairness of price, and I'll tell you why. If you look at their briefing, they rely on cases like Azor and Baum. I'll focus on Baum for a minute, because I think it's very instructive. The Baum case is a 2019 case out of the District Court of Connecticut. What was the condition of the facts before the court in Baum? Two sets of projections. There was no doubt about it. The factual averments were there. There were internal projections that were allegedly kept secret that were higher. I mean, do you dispute that if you, in fact, had a plan to relist and that the company's valuation was going to increase dramatically, and that wasn't factored into the price for the merger, then that you wouldn't have adequately represented the fairness of the price? I understand you dispute that you had a plan to relist at the time of the merger, but if, in fact, you did have such a plan to relist and you had projections about the company's valuation that was going to increase, wouldn't that mean that you hadn't, and you hadn't accounted for that in the merger price, and that would mean you hadn't fairly represented the merger price, right? It depends on that allegation about whether you had a current plan. I think if that were alleged, I would agree with your honor, except there is no second set of projections. And so why isn't it alleged? So, I mean, just first of all, to get to your actual position. So Judge Calabresi was suggesting that you probably had been somewhat far along in your plans to do it, and I'm not clear. I mean, is your position that you did not have any plan to relist at the time of the merger, and it was something that you decided to do afterwards, or would it be consistent with the statements you made that you were making some preparations to do so, but you hadn't finalized it, and so therefore it wasn't a misrepresentation to say that you didn't have a current plan? Our position, as we briefed your honor, is there is nothing in the complaint, particularly a verb whatsoever, to demonstrate a current plan to do a relisting at the time of the merger, which is key. What about the allegations that say it's just not possible to do this kind of restructuring and relisting within 15 months, and so you must have done it, you must have made some kind of preparation at the time of the merger? I know that you dispute that, whether it's possible, but why isn't that a factual dispute? Why isn't that a question of material fact as to whether it was possible for you to decide after the merger to do the relisting at all? Well, materiality, as was examined by the Supreme Court in Basic, flowed from the facts that were alleged. In Basic, you'll recall that in 1976, there were actual negotiations taking place- Yeah, but that isn't the question, that isn't the question at judgment now. Judgment now, she's asking you, judgment now, she's asking you whether it is possible to do what you did within 15 months without having enough planned ahead so that you would have been misleading by what you said in terms of what you admitted was needed to do it, and whether that is a factual question. That's the question, and you don't answer that by going to Basic. You have to answer that question that judgment now, she asked you. I'll do my best, Your Honor. Thank you for clarifying. I think that the answer is, based upon the only thing the court can look at, which is the four corners of the complaint, there is nothing alleged that would indicate a current plan or any inability to do a merger after the fact, starting from square one, nothing, nothing in the record. They do allege that, right? They have these allegations about all the steps that one needs to go through in order to get it relisted, right? It's in the complaint on page 38. It's paragraph 107. The steps involved for a company seeking to merge into a shell company include, and there's a whole list of all the different steps that needs to take place, and they said that those steps could not take place in the short time between the merger and the relisting. I understand that you dispute that. You say that, in fact, it would be possible, but I guess my question is, that seems like a factual dispute, right? Why is that not a factual dispute as to whether it was possible? In fact, if the plaintiffs are right and it was impossible, it means you must have had a plan at the time of the merger because you couldn't have initiated the process after the merger. And I think, as the district court stated directly to your point, Your Honor, is that they only have two sources of any allegations to support a current plan existing at all. I know, but I'm actually asking about something different. So it's true that the district court considered the confidential witness and the news reports. Correct. But I didn't see the district court actually address this allegation, where the plaintiffs said, you have to go through all of these steps in order to complete this process, and it's just not possible to do it within 15 months. I don't think the district court even addressed that point. And so it seems to me, it's in addition to the confidential witness and the news reports. Your Honor, I think there was an actual expert used in one of the other similar cases. It's either the Wu Chi case or the J.A. Soler case. I can't remember which one. And the court dealt with that and said that those averments were not sufficient, and they also blew out the confidential witnesses in those cases the same way they- You are still ducking Judge Menashe's question, which is, did the district court consider whether it was possible to complete the plan that you completed in 15 months, unless you had what would be sufficient to make your statement misleading? And is that a factual question as to which there was no discussion, no evidence? Yes, I- Something that would have to go to a jury. I didn't see the district court look at that, Your Honor. I don't think I saw that in the opinion. That's the point that Judge Menashe raised, said, isn't that something that the district court should have considered? And my answer can only be, I don't believe so at all, Your Honor, because there's nothing to indicate a current plan that would violate our disclosures. And unless they can do that through something, either a confidential witness that the court thinks should be credited in some way, or these news articles- I'm sorry, you keep saying there's nothing to indicate a current plan, but let's say we just posit it. It's impossible to do a relisting in less time than two years. It's just, you have to have initiated the process two years in advance. If that were true, it would show that you had a plan at the time of the merger, right? So putting aside the confidential witnesses, or the witness, and putting aside the newspaper reports, isn't the allegation that it's not possible to do this in 15 months, doesn't that itself suggest you had a plan at the time of the merger? I guess I was kind of expecting you to say that those allegations are conclusory or not serious or something, but you're just saying, even if they're right, they would still have to show something else, but I'm not sure that that's right. No, I am saying they're conclusory, Your Honor, because there's nothing they're based on. They're out of whole cloth. There's no CW that says that. I would also have thought that you would say that whether there was the existence of a plan or the possibility of a plan is something that would not in fact have made a difference. That is to say, a sophisticated investor would know that if there was that possibility, which you make aware of, that that would be the same in terms of what they did. But you didn't say that, I'm surprised. Well, the disclosures absolutely say that, Your Honor, by saying that in the future, we will consider a relisting. So what does it take for a company to make that disclosure? So when you're saying that, you're saying that the district court erred in being too favorable to the other side when it said if there was a plan, then what you said was sufficient to be misleading and to survive summary judgment, because the district court went on the ground that there wasn't sufficient showing of a plan, and that would get it into trouble with the argument that Judge Menashe has made. You may have a different argument, but it gets you a little bit into trouble with what the district court did and didn't do. I think I agree with the district court that the court searched the complaint diligently for any particularized facts under the PSLRA and Rule 9b and could find none from the CW or the newspaper articles to support this theory that their entire complaint rests on that there was some alleged current plan other than simply the disclosed possibility of a future of remission. That's not the theory that Judge Menashe is asking you about. He says the theory embedded in the complaint is that physically, because of time constraints, this could not be done in less than 18 months because of filing requirements, because of publishing requirements. It could not be done, and therefore it had to have started before the merger. Can you speak to that? And I know you agree that the judge did not deal with it, but can you speak to that? Those are vermins. I can. I think they are without particularized pleading from a source that is recognized in the law to support those bald-faced allegations. That's my answer. Okay. All right, well, your time has expired. Let me turn to Mr. Weaver for three minutes of rebuttal. Thank you, counsel. Thank you. Thank you, Your Honor. Yes, I think it's also instructive and important that my adversary discuss the basic case because another issue that the district court didn't address was the basic decision. And the basic decision makes it very clear, rejected the Third Circuit standard that you needed a concrete plan. The basic court, the Third Circuit had a standard that you needed an agreement in principle in order to be material enough to trigger a disclosure requirement. And judge, the district court did not at all address that basic standard. The basic court held that you look at various factors. You look at the possibility of there being a merger versus the magnitude of that transaction. And when you're dealing with a full merger here- You're not answering what was Judge Menashe's question during your initial argument about whether it really would have made, whether there are adequate, there is adequate pleading that it would really have made a difference to your clients on whether they knew that there was the possibility of a plan, the probability of a plan, or actually a plan in place. It cannot be that this court ruled that an investor would not care whether or not a company plans to go ahead and relist another stock- Well, if in terms of what it would do to the price, the possibility of a plan is the same as the existence of a plan, then I don't think an investor would really care. But there would always be, there's always a possibility that there could be a plan. Well, but the possibility- We never intend to relist? A corporation wouldn't say we never intend to relist. A corporation always has an option. This was more specific, but it talked about relisting in a foreign exchange and given the link to China, that is quite clear what they're talking about. So if you're telling me that it wasn't clear that they might be thinking about doing something in China, I think that just isn't, anybody who had been involved with this company would know what they were talking about. So the question there is, does that make a difference? Well, I would say that the fact that there is, that it was being pitched to investors, that these are, our clients are investors, right? And the fact that it's being pitched to other investors, that this is what we're going to go ahead and do. This is how we're going to do it. We're going to do it back to our listing. It's going to take us 18 months. We think we're going to get a 550% buy back. I think we have that argument. Just before your time is up, I want to just ask you to address the question I had asked to opposing counsel. So you have this allegation that it takes more than 15 months to do this, but it actually, it's a little softer than that. It says it generally would, it would ordinarily take this long. It typically takes companies at least a full year. Is that, would that allegation be enough on its own to suggest that they had a plan at the time of the merger? It would be. When you're dealing with a significant corporate transaction which includes segregating out one division, which includes a backdoor listing, which you have to identify another corporation, and then the relisting process, clearly, and we set out in detail based on an expert on what that process is, that would be enough on its own. But when you're adding to the fact that not only would that be enough on its own, that we actually have five different separate allegations that this was actually contemplated and discussed at the company level. That's a different, that's a different issue. And the question is- Well, it goes to the totality of the evidence, that there was a plan beforehand. The question is whether the pleading on that is sufficient for the degree of specificity in the pleading that in these cases are required with respect to section nine. So the question is not whether if the pleading was sufficient, you might have other evidence sufficient to make it. The question is, is the pleading on the impossibility of a plan being completed, if there weren't one there sufficiently specific to meet the requirements of pleading in these cases? Yeah, the answer- That's the question, so answer it. The answer is definitively yes. It is sufficient. It does take that amount of time. It cannot take much shorter than a year and a year and a half to go ahead and segregate out the major portion of a corporation to go ahead and identify back to our listing and then ultimately go ahead and relist. And if one disputes that, that's a question of fact. So it isn't specific enough. And if there's a dispute, it's a question of fact. And then when you add to that, all the other allegations that we add, which I know the court doesn't want to hear about at the moment, but we add the five different sources saying not only would it have taken that long necessarily, but it was taking that long because they were doing it. You add those allegations. We have a win here, respectfully, Your Honor. And we do have a suit in the meeting. The court came up with this concrete, definite plan out of whole cloth. It didn't exist beforehand. And all of a sudden it started to exist. And there's nothing that doesn't exist in BASIC. It doesn't exist in the Castaneda versus Yonah Rubicam. It existed in the district courts, respectfully, own imagination. And the court is bound by second circuit precedent. And to say, well, we, every sophisticated investor always knows that something might happen to a corporation, be it merger, be it buyout, and be it realistic. And there's a clear difference between, and Ginkgo Solar makes that clear. There is a clear difference between something may happen in the far gone future, i.e. 10 years from now, 20 years from now, 30 years from now, and something is contemplated. And the second circuit has spoken repeatedly about that fact that there is a significant difference between a plan and a plan of action versus this might happen a decade from now, two decades from now, or five years from now. Clearly it affects the stock price. I mean, that's a reasonable investor would want to know, do I have a plan now? Or you might have a plan. It's the difference between saying, talking to an employer and saying, one day we might have to lay off staff. You never know what could happen in the future. And your job is, or we're considering laying you off right now, but I'm not telling you that. That's the difference. I think we have that argument. Thank you, counsel. You're reserved decision. Thank you both. We'll reserve decision.